**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**AMERICAN ECONOMY INSURANCE and**                                 **PLAINTIFFS**
**AMERICAN STATES INSURANCE COMPANY**

**v.**                                            **4:05-CV-00155 GTE**

**CAMERA MART, INC., BOYLE REALTY
COMPANY, INC., CUSTOM AUDIO, INC.,
C&P CARPETS, COMPUTER DOCTOR
and MAX CLEANERS**                                                         **DEFENDANTS**

**ORDER DENYING PARTIAL SUMMARY JUDGMENT MOTIONS**

The following partial summary judgment motions are pending in this declaratory judgment action: (1) Defendant Camera Mart's Motion for Partial Summary Judgment; (2) Custom Audio's Motion for Partial Summary Judgment, and (3) Boyle Realty Company's Motion for Partial Summary Judgment. Response Briefs to all the motions (and Reply Briefs for two motions) have been filed. The Court, after reviewing the entire record in this case, concludes that all three partial summary judgment motions should be denied.

**FACTUAL BACKGROUND**

**The Fire.**

On August 23, 2004, a fire occurred on the business premises of Camera Mart, Inc. ("Camera Mart") Firefighters called to the scene found Mike Dolan, an officer and part-owner of Camera Mart, badly burned. Mr. Dolan was transported to the Arkansas Children's Hospital Burn Unit, where he later died of his injuries. The fire damaged Camera Mart and several neighboring businesses, including Separate Defendants Custom Audio, Inc., C&P Carpets, Computer Doctor and Max Cleaners.

**Insurance.**

At the time of the fire, Camera Mart was insured under a policy of insurance issued by Plaintiff American Economy Insurance. A secondary or excess policy was issued by Plaintiff American States Insurance Company. The basic policy names as an additional insured Boyle Realty Company, from whom Camera Mart leased the premises on which its business was located. Plaintiff American States Insurance Company issued umbrella or excess coverage to American Economy's policy. Copies of both policies are attached as Exhibits 1 and 2 to Plaintiffs' Complaint.

**The Claims in this Lawsuit.**

On February 8, 2005, Plaintiffs American Economy Insurance and American States Insurance Company (hereinafter, collectively "American") filed a Complaint for Declaratory Judgment. Therein, Plaintiffs seek a declaration that there is no coverage, and thus no payment obligation, under either policy of insurance. Defendant Camera Mart, Inc., filed a Counterclaim contending that it is entitled to recover the policy limits for its losses in connection with the August 23rd fire and resulting loss of its business.

Custom Audio, a business near Camera Mart, contends that it sustained smoke damage due to smoke migration from the fire. Custom Audio has filed a Counterclaim wherein it contends that there is coverage for its losses under the policies of insurance issued by Plaintiffs. Custom Audio also claims indemnity for its losses from Separate Defendant Camera Mart, Inc. and the Estate of Kenneth Michael Paul Dolan.

Camera Mart leased from Separate Defendant Boyle Realty the property located at 10014, Rodney Parham, Little Rock, Arkansas, 72207. Pursuant to the lease agreement, Camera Mart was required to obtain liability and property damage insurance on the leased premises and to name Boyle Realty as an additional insured under the policy. Camera Mart did so. Boyle Realty is named as an

additional insured under the primary policy issued by Plaintiff American.

Boyle Realty has filed a Counterclaim contending that the Policy provides coverage for direct physical loss or damage to the property. Boyle Realty further contends that it is entitled to recover under the Policy as an additional insured because it has no responsibility for causing the fire.

**American's Denial of Coverage**.

Camera Mart made demand that American defend it against claims of the other Defendants. American, after conducting an investigation, determined that Mike Dolan intentionally set the fire. Based on that conclusion, American denied coverage for the fire loss to Camera Mart and apparently, also declined to provide a defense.[1] American also denied the property damage claim filed by Boyle Realty.

**Pending Motions.**

Three motions for partial summary judgment are pending. Camera Mart contends in its motion that the Court should find as a matter of law that there is coverage under the American policy. Separate Defendant Custom Audio has also filed a motion for partial summary judgment contending that American owes a duty to defend and indemnify Camera Mart for the liability claims asserted against it by Custom Audio. Separate Defendant Boyle Realty Company has also filed a Motion for Partial Summary Judgment, contending that it is entitled to recover under the Policy's first-party or property damage coverage.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to

---

[1] American's refusal to provide a defense to Camera Mart is not before the Court at this time. Camera Mart's request for summary judgment is limited to the issue of coverage.

judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view all facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). The party moving for summary judgment must establish both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co.,* 475 U.S. at 586-90, 106 S.Ct. 1348.

"Under Arkansas law, construction of an unambiguous insurance policy is a question of law for the court." *Arkansas Power and Light Company v. Hartford Steam Boiler Inspection and Insurance Co.*, 257 F.3d 853 (8th Cir. 2001); *see also State Automobile Ins. Co. v. Lawrence*, 358 F.3d 982 (8th Cir. 2004).

## DISCUSSION

### 1. Key Policy Provisions

The Court quotes the following key provisions from the primary CGL policy[2] (Policy Number 02-BP-190193-1) issued by American (hereinafter referred to as "the Policy"):

**BUSINESS OWNERS COVERAGE FORM**

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations.

. . .

**SECTION I - PROPERTY**

**A.    Coverage**

We will pay for direct physical loss of or damage to Coverage Property at the

---

[2] Although an excess policy was also issued, the present motions involve only the primary policy.

- 4 -

premises described in the Declarations cause by or resulting from any Coverage Cause of Loss.

. . .

**B.     Exclusions**

. . .

2.     We will not pay for loss or damage caused by or resulting from any of the following:

. . .

**f.     Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, . . .

**(1)**     Acting alone or in collusion with others;
**(2)**     Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

. . .

**F.     Property General Considerations**

**1.     Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

. . .

**SECTION II - LIABILITY**

**A.     Coverages**

**1.     Business Liability**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies.

. . .

**B.     Exclusions**

**1.     Applicable to Business Liability Coverage**

This insurance does not apply to:

- 5 -

        **a.**    **Expected or Intended injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

. . .

(Policy, Exhibit 1 to Complaint, at pp. 1, 13, 16, 23, 29, and 32).

### 2. Evidence Regarding the Fire

The investigations conducted by the local fire department and an expert hired by American determined the fire was of an incendiary nature accelerated by gasoline. There was no pre-fire forced entry to the store. The store was equipped with a burglary alarm. The alarm company detected motion in Lab 1 where the fire originated at 3:52:50 a.m. The alarm company attempted to telephone the store and Dolan's home. Both lines were busy. At 3:56:46, a passerby saw the fire and notified the local fire department.

The local fire department arrived on the scene at 4:00:33 a.m. Mike Dolan was observed walking from the building. He admitted he had been inside. Mr. Dolan's clothes contained traces of gasoline and a box of candles. Prior to his death, while hospitalized, Mr. Dolan claimed to have had "a feeling" that the store was on fire and to have innocently happened upon it.

Sufficient evidence exists to permit a jury to conclude that the fire was an intentional and criminal act of arson committed by Mike Dolan. Because American, the only party who contends that the fire was an act of arson, is the non-moving party as to all the pending summary judgment motions, the Court will assume for purposes of the present Order that Mike Dolan intentionally started the fire that destroyed Camera Mart.

### 3. Imputation of Mike Dolan's Criminal Act to Camera Mart

Even if Mike Dolan is found to have committed arson, Defendants contend that this should not bar Camera Mart from recovering under the Policy. Defendants contend that Camera Mart and

Mike Dolan are separate entities, that Camera Mart was the named insured, and that Mike Dolan's actions were not performed in his official capacity.

Defendants' reliance on the numerous cases in support of the proposition that an insurance company may not deny recovery to one spouse when the other spouse commits arson is misplaced. Such cases "do not deal with the central question of when recovery can be denied to a corporation under a fire insurance policy; they only address the circumstances under which recovery can be denied to married individuals that are not bound together in the different and less protective relation that shareholders have to one another. Equitable considerations should and do play more of a role in non-corporate cases of arson." *K&T Enterprises, Inc. v. Zurich Co.*, 97 F.3d 171, 179 (6th Cir. 1996).

While Arkansas courts have addressed the issue of insurance coverage for arson in the context of spouses, this Court knows of no reported case addressing this particular issue in the corporate context. Even in the context of spouses, the Arkansas Supreme Court has not hesitated to deny coverage to an innocent co-insured spouse where the policy language required such a result. *See Nolan v. Farmers Ins. Co., Inc.*, 319 Ark. 449 (Ark. 1995)(denying coverage to innocent spouse whose wife committed arson where policy language excluded coverage for the intentional acts of "any insured"); *See also Bryan v. Employers Nat'l Ins. Corp.*, 294 Ark. 219 (Ark. 1988)(denying coverage to innocent business partner whose co-partner committed arson where policy excluded coverage for any criminal act by "any insured").

The Court must predict how the Arkansas Supreme Court, if presented with this issue, would rule. The above quoted Arkansas cases undercut any notion that Arkansas public policy prevents an insurance company from denying recovery to an innocent co-insured. Instead, the appropriate inquiry focuses on the policy language itself. "Intent to exclude coverage in an insurance policy

should be expressed in clear and unambiguous language." *Bryan*, 294 at 451. "[W]here the terms of the policy are clear and unambiguous, the policy language controls; and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms." *Id.*, at 452.

Other jurisdictions have recognized that an insurance carrier may assert arson as a defense against a corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised complete dominance and basic control of the affairs of the corporation. *United Wholesale Furniture Mart, Inc. v. Michigan Basic Property Ins. Co.*, 159 Mich. App. 94 (1987).

In *K&T Enterprises, supra*, the Sixth Circuit Court of Appeals arguably expanded the test articulated in *United Wholesale*, finding as a matter of law that the insurance company was justified in denying the claim where the arsonist was the president and sole officer of the corporation, as well as a 50% shareholder, was married to the other 50% shareholder and the married couple together conducted the day-to-day operations of the corporation. *K&T Enterprises*, 97 F.3d at 179.

In order to deny coverage to Camera Mart for Mike Dolan's assumed arson, there must be sufficient proof from which it may be found that Mike Dolan either dominated or controlled the corporation to the extent that his acts are, in effect, the acts of the corporation, or it must be shown that the totality of the circumstances is such that corporate participation or assent may be inferred, due to Mike Dolan's managerial discretion or his overall position in the corporation.

Plaintiff American has come forward with evidence suggesting that Mike Dolan was more than simply an officer and stockholder of Camera Mart. Plaintiff contends that Mike Dolan dominated the closely held corporation and was its principal stockholder. Mr. Dolan, along with his family, is alleged to have purchased Camera Mart in 1983, to have had exclusive control over the corporation's financial and business decisions, and to have managed Camera Mart on a daily basis.

American contends that Mike Dolan and Camera Mart should be considered one and the same.

If the jury concludes that Mike Dolan committed arson, the Court concludes that his criminal act may be imputed to Camera Mart.[3]  If Mike Dolan's arson is imputed to Camera Mart, the Court agrees with American that it will be entitled to a declaration that there is no coverage for Camera Mart under the Policy exclusions for property loss caused by "dishonest or criminal acts" or property damage "expected or intended from the standpoint of the insured."[4]

American also contends that there was no "occurrence" under the Policy because the act of intentionally starting a fire can not be found to be an occurrence triggering liability under the Policy's Liability section.[5]  That portion of the Policy states that the insurance applies to "bodily injury"" and "property damage" only if it "is caused by an 'occurrence.'"   (Policy at p. 29). "Occurrence" is defined to mean "an accident." (Policy at p. 44).

In a 2002 case, the Michigan Supreme Court addressed this issue in the context of the insurer's contention that there was no coverage under a homeowners' policy for the shooting death that resulted when the insured pointed a gun at a friend's head and pulled the trigger. The Court noted:

> In the instant case, the policy defines an occurrence as an accident, but does not define what constitutes an accident. In similar cases where the respective policies defined an occurrence as an accident, without defining accident, we have examined the common meaning of the term. In such cases, we have repeatedly stated that an accident

---

[3] If Mr. Dolan's act or arson is imputed Camera Mart, the Court will treat the arson as if it were committed by the insured Camera Mart.  In that case, Camera Mart's arguments regarding severability and the effect of the Policy's severability of interest clause are misplaced and irrelevant.

[4] *See* American's Policy, Dishonestly Exclusion under Property Coverage, at p. 16, and Expected or Intended Injury Exclusion  Applicable to Business Liability Coverage, at p. 32. Both of the relevant provisions are quoted, *supra*.

[5] It does not appear that a threshold "occurrence" is necessary to trigger coverage under the Policy's Property coverage section.

> is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated and not naturally to be expected. . . .  Accidents are evaluated from the standpoint of the insured, not the injured party. . . .
>
> . . .
>
> When an insured acts intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended.
>
> . . .
>
> What this essentially boils down to is that, if both the act and the consequences were intended by the insured, the act does not constitute an accident.  On the other hand, if the act was intended by the insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured.
>
> As to the perspective from which the analysis should be made, the question is not whether a reasonable person would have expected the consequences, but whether the insured reasonably should have expected the consequences.

*Allstate Inc. Co. v. McCarn*, 466 Mich. 277, 281-82, 645 N.W.2d 20, 22-23 (2002) (omitting internal citations and quotations).  If the jury concludes that Mike Dolan committed arson and the Court determines that such conduct should be imputed to Camera Mart, it seems almost certain that it will also be appropriate to hold that there was no "occurrence" triggering coverage under the Policy's Business Liability Coverage.

For the reasons discussed herein, the Court concludes that Camera Mart's motion for partial summary judgment must be denied.

In their upcoming trial briefs, which shall be filed by October 6, 2006, the Court directs the parties to state their position on the appropriate test to be used to determine whether the conduct of Mike Dolan should be imputed to Camera Mart.  The parties shall also state whether they agree that the jury will determine whether Mike Dolan committed arson, but the Court will determine whether

Mike Dolan's arson, if found by the jury, shall be imputed to Camera Mart. If the parties disagree with this proposition, then they shall offer legal support for their position.

### 4.     **The Lessor's Right to Recover**

Boyle Realty is named as an additional insured under the primary Policy issued by American. Boyle Realty claims that it is an innocent insured and is entitled to recover under the Policy independently of whether Camera Mart is permitted to recover. Boyle Realty has moved for partial summary judgment seeking a determination that it may recover under the Policy for the property loss it suffered as a result of the fire. Boyle Realty previously made a demand for $650,658.18, which American rejected. (*See* Letter of Denial, Exhibit B to Boyle Realty's Counterclaim).

The crux of the issue is whether Boyle Realty may be found to have rights greater than Camera Mart under the Policy, not whether Boyle Realty is "an innocent insured." The Court accepts that Boyle Realty is completely innocent in this matter. Nothing prevents an insurance company from excluding coverage for "innocent co-insureds" for a loss intentionally caused by another named insured. The Court concludes, reading the Policy as a whole, that American intended to deny Property damage coverage to innocent additional insureds where the named insured intentionally destroyed the insured property.[6]

---

[6] A different issue would be presented if Boyle Realty's dishonest or criminal act had caused the loss and the Court were called upon to determine whether "you" in the dishonest acts exclusion refers solely to the dishonest acts of Camera Mart or also excludes the dishonest acts of additional insured Boyle Realty. The case law on this issue also appears favorable to American. One court construed prefatory language identical to that in the Policy here (which defines "you" as "the Named Insured") and concluded that the "you" in the dishonest acts exclusion referred to both the Named Insured and to additional insureds. *See K&W Builders, Inc. v. Merchants and Business Men's Mutual Insur. Co.,* 255 Va. 5, 495 S.E.2d 473, 476-77 (reading the dishonest acts exclusion "to mean that the insurer will not pay for loss or damage in the event any one of the three insureds commits a dishonest or criminal act"); *See also Prisco Serena Sturn Architects, Ltd. v. Liberty Mutual Ins.*, 126 F.3d 886, 892 (7th Cir. 1997)(rejecting additional insured's argument that "you" as used throughout policy only applied to named insured).

The result would be different if Boyle Realty were seeking relief under the Policy's liability provisions. That portion of the Policy contains a separation of insureds clause, which provides:

> **E.   Liability And Medical Expenses General Conditions**
> . . .
> **5.   Separation of Insureds**
>
> Except with respect to the Limits of Insurance of **Section II – Liability**, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
> b. Separately to each insured against whom claim is made or "suit" is brought.

(Policy at p. 42).

Severability clauses are commonly used to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject of course to the policy's liability limits. *See, e.g., Utica Mut. Ins. Co. v. Emmco Ins. Co.*, 309 Minn. 21, 243 N.W.2d 134, 142 (1976). Significantly, the severability clause in this case is found <u>only</u> in the Policy's Liability section and is conspicuously absent from the Policy's Property section. Boyle Realty's summary judgment motion is limited to seeking coverage under the Policy's first-party or Property section.[7] Because Boyle Realty's coverage claim in this case is so limited, it cannot take advantage of the severability clause found in the Policy's Liability section.

For the same reason, Boyle Realty's reliance on *Admiral Ins. Co. v. Trident NGL*, Inc., 988 S.W.2d 451 (Tex. Ct. App. 1999), is misplaced. In *Admiral*, the additional insured was attempting to recover under the liability portion of a CGL policy and benefitted from a severability of interest clause specifically providing that the insurance would apply separately to each insured against whom

---

[7] This is consistent with its Counterclaim, which seeks to recover "for direct physical loss or damage to Boyle Realty's property leased to Camera Mart." (Second Amended Answer and Counterclaim at ¶ 14).

- 12 -

claim was made or suit brought. If Boyle Realty were seeking to establish liability coverage, it might well be entitled to summary judgment to establish such coverage. It is not, however, and it is therefore limited to the Policy provisions applying to the Property damage coverage it seeks.

The Court likewise finds little precedential value in the cases involving innocent spouses relied upon by Boyle Realty for the same reasons noted above when addressing Camera Mart and Custom Audio's motion. The primary issue before the Court is the intent of the parties as expressed in the contract.[8] Consequently, the results reached by different courts in different factual situations interpreting different policies offers little precedential value.

Further supporting the Court's finding regarding the parties' intent here is the fact that the Policy's property coverage provisions specifically elevates the rights of mortgageholders by including the following provision: "If we deny your claim because of your acts . . . , the mortgageholder will still have the right to recover loss payment if the mortgageholder [satisfies certain conditions, such as paying any premiums due and signing a proof of loss, in which case the Policy terms] will then apply directly to the mortgageholder." (Policy at p. 23-24). Accordingly, Camera Mart's arson would not bar recovery for property loss by a mortgageholder. Boyle Realty, however, is not a mortgageholder. Nor is Boyle a loss payee, for whom additional rights are provided in the Policy by specific endorsement. (*See* Loss Payable Provisions Endorsement).

The Court agrees with American that the Policy exclusion for "dishonest or criminal acts by you" will exclude coverage for Boyle Realty if Mike Dolan's actions are imputed to Camera Mart.

---

[8] *See, e.g., McCauley Enterprises v. New Hampshire Ins. Co.*, 716 F.Supp. 718, 720 (D. Conn. 1989)(explaining that jurisdictions previously following the general rule that "an innocent co-insured, whether partner . . . or spouse . . . cannot recover on a fire insurance policy where the property wilfully was destroyed by the other co-insured," did so based on either the relationship of the co-insureds, that is spousal, business, or other, or on the underlying property interest, that is, tenancy by the entirety, joint tenancy, or other, and noting that courts have moved away from that analysis and have focused instead on the intent of the parties as expressed in the insurance contract.)

In other words, the Court rejects Boyle Realty's contention that "you" is to be determined solely from Boyle Realty's standpoint. The lack of a severability of interests clause in the Property coverage section of the Policy forecloses this result. The Policy read as a whole makes clear that its intent, as to Property coverage, was not to provide any greater rights to coverage for the additional insured than the named insured. If Boyle Realty desired additional coverage it could have (and may have) purchased additional coverage to cover the risk that its lessee would intentionally destroy the leased premises.

Boyle Realty additionally asserts that its claim, even if excluded under the dishonest or criminal act exclusion, can be saved by the following provision: "Any act or neglect of any person other than you beyond your direction or control will not affect this insurance." (Policy, I Property, F Property General Conditions). The Court rejects this argument. The Court has already rejected the contention that "you" may be construed to refer solely to Boyle Realty, severally, in connection with the dishonest acts exclusion. It likewise rejects it in connection to this provision. Whether "you" in the Policy's Property General Conditions provision refers only to Camera Mart or jointly to Camera Mart and Boyle Realty (the only two possibilities), it will not save coverage if Camera Mart, through Mike Dolan, committed arson. Camera Mart's act in that circumstance would not be beyond Camera Mart's control.

The Court rejects Plaintiffs' argument that there was no "occurrence" triggering coverage under the Policy in connection with Boyle Realty's claim because the fire was not an accident, but rather an intentional act. The "occurrence" prerequisite for coverage appears only in the Liability section of the Policy and is not a requirement for first-party Property Coverage. That the Policy clearly contemplates providing coverage for property damage caused by arson in some circumstances is made clear by a Policy endorsement in which American agrees that it "will pay an arson reward

for information which leads to an arson conviction for loss or damage covered by this policy." (Ultra Plus Endorsement, at p. 5).

For the reasons stated above, the Court concludes that Boyle Realty has failed to demonstrate that it is entitled to coverage as a matter of law.

## CONCLUSION

For the reasons herein stated,

IT IS THEREFORE ORDERED THAT the Motions for Partial Summary Judgment filed by Camera Mart, Inc. (Doc. No. 21) and Custom Audio (Doc. No. 33) be, and they are hereby, DENIED.

IT IS FURTHER ORDERED THAT the Motion for Partial Summary Judgment (Docket No. 42) filed by Boyle Realty Company, Inc., be and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT the Motion to Dismiss filed by Plaintiffs (Doc. No. 29) be, and it is hereby, DENIED as MOOT.  Boyle Realty withdrew its claim for bad-faith against Plaintiffs when it filed its Second Amended Counterclaim.

The parties are reminded of the Court's request that their trial briefs include additional briefing regarding the appropriate test to be applied to determine whether a jury finding of arson will be imputed to Camera Mart (see page 10 herein).

IT IS SO ORDERED this  15th  day of September, 2006.

                                                    __/s/Garnett Thomas Eisele_____
                                                    UNITED STATES DISTRICT JUDGE